UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

CHERYLL VOSBURGH,

                                                    Plaintiff,


        -v.-                                                                    5:08-CV-00653
                                                                               (NPM/GHL)


AMERICAN NATIONAL RED CROSS;
AMERICAN RED CROSS OF TOMPKINS
COUNTY; JENNIFER YARBROUGH,
Executive Director of American Red Cross
of Tompkins County; CYNTHIA
GORDINEER; LINDA ANDREI; SUSAN
BACKSTROM; DAWN DARBY; ANNE
DIGIACOMO; MARY DORMAN;
THOMAS DORMAN; GEOFF DUNN;
JANE DUNNICK; SARAH JANE
ELLSWORTH; MARTHA MAPES;
WILLIAM MAXWELL; MICHAEL
PINNISI; GEORGE TABER; PATRICIA
WILLIAMS; and MICHAEL YEHL,

                                                    Defendants.

_____

APPEARANCES:                          OF COUNSEL:

WIGGINS & KOPKO, LLP                  EDWARD E. KOPKO
Attorneys for Plaintiff
308 N. Tioga Street
Ithaca, New York 14850

EPSTEIN BECKER & GREEN, P.C.          LAURI F. RASNICK
Attorneys for Defendants              ERIC B. TOPEL
250 Park Avenue
New York, New York 10177

Neal P. McCurn, Senior District Judge

## *MEMORANDUM, DECISION and ORDER*

### *I. Introduction*

Presently before the court in this employment discrimination action is a motion by defendants to dismiss or in the alternative for summary judgment and for sanctions. Plaintiff, Cheryll Vosburgh ("Plaintiff") opposes, and the moving defendants reply. Oral argument was heard in Syracuse, New York on October 6, 2009. Decision was reserved.

### *II. Procedural Background*

By her amended complaint, Plaintiff alleges claims against defendants American National Red Cross ("Red Cross"); American Red Cross of Tompkins County ("the Chapter"); Jennifer Yarbrough, Executive Director of American Red Cross of Tompkins County ("Yarbrough"); Cynthia Gordineer, Regional Director ("Gordineer"); and fifteen individually named board members of the Chapter ("Board Members")[1] (collectively, "Defendants") pursuant to the Family and

---

[1] The board members named on the face of the Amended Complaint are: Linda Andrei, Susan Backstrom, Dawn Darby, Anne Digiacomo, Mary Dorman, Thomas Dorman, Geoff Dunn, Jane Dunnick, Sarah Jane Ellsworth, Martha Mapes, William Maxwell, Michael Pinnisi, George Taber, Patricia Williams and Michael Yehl. See Dkt. No. 21. Summonses were initially executed as to Yarbrough and Gordineer as well as board members Andrei, Backstrom, Darby, T. Dorman, Mapes and Yehl. Pursuant to stipulation of all parties, Maxwell and Taber later waived service. See Dkt. No. 46. To date, the remaining board members, Digiacomo, M. Dorman, Dunn, Dunnick, Ellsworth, Pinnisi and Williams, have not been served. Pursuant to Federal Rule of Civil Procedure 4(m), where, as here, "a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time. However, if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). As more than 120 days have elapsed since the filing of the Amended Complaint, and

Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq. ("FMLA") and New York Human Rights Law, N.Y. EXEC. LAW § 296. et seq. ("NYHRL"). Specifically, Plaintiff purports to set forth claims for retaliation and interference under the FMLA; and claims for age discrimination, disability discrimination, and retaliation under the NYHRL.

Defendants seek dismissal of all claims against the Red Cross for lack of personal jurisdiction and insufficient service of process pursuant to Federal Rules of Civil Procedure 12(b)(2) and (5), respectively. Defendants further seek dismissal for failure to state claims upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, as to all claims against the Board Members, all claims predicated on Plaintiff's alleged June 6, 2008 termination, and all claims predicated on Plaintiff's allegation that her reassignment was in retaliation for exercising her rights under the FMLA. Finally, Defendants seek sanctions, attorneys' fees and costs pursuant to this court's inherent power and 28 U.S.C. § 1927. At oral argument, counsel for Defendants agreed to accept service for the Red Cross. Accordingly, that portion of Defendants' motion is denied as moot.

One day before Plaintiff's opposition papers were due, counsel for Plaintiff asked this court for "guidance" regarding the scope of Plaintiff's opposition to the pending motion, and notified the court that it must, as a threshold matter, determine which standard shall be applied to Defendants' motion, to wit, whether the motion

---

Plaintiff has failed to show good cause for the lack of service, all claims against the remaining board member defendants, Digiacomo, M. Dorman, Dunn, Dunnick, Ellsworth, Pinnisi and Williams are dismissed.

shall be considered as a motion to dismiss under Rule 12(b)(6), or a motion for summary judgment under Rule 56.  <u>See</u> Dkt. No. 40.  Despite the court clearly notifying Plaintiff that after due consideration of all papers submitted regarding the pending motion, it would decide whether to convert the motion to dismiss to a motion for summary judgment and if it decided to treat the motion as a motion for summary judgment, it would notify the parties of same and give them a reasonable opportunity to present all materials pertinent to such a motion, Plaintiff nonetheless opposed the motion solely as a motion to dismiss instead of also addressing the motion in the alternative for summary judgment.  In response, Defendants asked the court to convert the pending motion to a motion for summary judgment in order to prevent the wasting of further judicial resources.  The court concurred with Defendants and gave both parties the opportunity to submit all materials pertinent to a motion for summary judgment.  Thereafter, Plaintiff opposed, and Defendants replied.

### III.  *Factual Background*

The following facts are uncontested unless noted.

According to Plaintiff, she began her employment with the Chapter in 1995. By 2008, she was earning approximately $48,000 per year as Director of Human Resources and Development.  Yarbrough became the Executive Director of the Chapter in December 2007, replacing Gordineer, who had been interim Executive Director for the Chapter, and is now a Regional Director for the Red Cross.

In February 2008, Plaintiff states that she called the Red Cross's Concern Connection Line ("CCL") to "report . . . acts of inappropriate conduct and age discrimination perpetuated by Yarbrough and Gordineer."  Aff. of Cheryll

4

Vosburgh, Nov. 17, 2008, ¶ 19, Dkt. No. 50 ("Vosburgh Aff."). About a week later, Yarbrough told Plaintiff that she knew who made the CCL complaint. In March 2008 an investigator from Red Cross headquarters was sent to the Chapter to investigate the CCL complaint. While the investigator was at the Chapter, Plaintiff's name was revealed to Yarbrough, Gordineer and Darby, a member of the Chapter's board of directors. Thereafter, according to Plaintiff, "Yarbrough, Gordineer and Darby began an escala[t]ing campaign of offensive, threatening, intimidating and belligerent behavior toward [Plaintiff] in retaliation" for the CCL complaint. Id. ¶ 24.

Both parties agree that on May 7, 2008 at approximately 1:00 p.m., a meeting occurred between Plaintiff and Yarbrough. See id. ¶ 28; Decl. of Jennifer Yarbrough, Sept. 23, 2008, ¶ 3, Dkt. No. 3 ("Yarbrough Decl."). Plaintiff states that board member Patricia Williams was also present at the meeting. Plaintiff admits that during the 1:00 p.m. meeting, she was notified that she was terminated as the Director of Human Resources and Development, and she was offered a new position as Volunteer Coordinator, at less than half her then current salary. See Vosburgh Aff. ¶¶ 28-29. According to Plaintiff, Yarbrough gave her until May 9, 2008 to decide whether to accept the new position. See id. ¶¶ 33-34.

Plaintiff states that she asked for, and was granted by Yarbrough, permission to leave work early on May 7 after the meeting concluded. Plaintiff states that she was "profoundly upset and sickened" and went directly to see her physician, who ordered her to take a medical leave from work. Id. ¶¶ 39-40.

According to Yarbrough, on May 7, 2008 at 4:18 p.m., she sent an email message to Plaintiff that "effective immediately your job responsibilities have been

5

reassigned to the Volunteer Recruitment Coordinator position." Yarbrough Decl., ¶ 4, Ex. A.  At 4:30 p.m., according to Yarbrough, or at 4:15 p.m., according to Plaintiff, Plaintiff delivered a leave request to Yarbrough, wherein she sought leave from May 7, 2008 through July 30, 2008.  See id. ¶ 5, Ex. B; Vosburgh Aff. ¶ 42.

Thereafter followed a series of written correspondence between Yarbrough and Vosburgh.  One letter from Yarbrough addressed to Plaintiff contains language upon which Plaintiff bases her contention that she was terminated on June 6, 2008. See Vosburgh Aff. ¶¶ 47-48, 57.  Plaintiff contends that she received this undated letter on May 21, 2008.  In the letter, Yarbrough confirmed receipt of Plaintiff's request for Personal and Family Leave, but informed Plaintiff that the Chapter had discontinued its Family Medical Leave benefit effective May 16, 2008.  Yarbrough went on to explain that nonetheless, Plaintiff had accrued 156 hours of leave, and therefore, Plaintiff was granted twenty-one days of leave, from May 8 through June 6, 2008.  Yarbrough further informed Plaintiff as follows:

> If you are unable to return to work on June 6, 2008, you may apply for Leave Without Pay (LWOP).  Decisions whether to grant requests for LWOP are made on a case-by-case basis and will be evaluated on a variety of factors, including but not limited to, business needs, workload, and staffing considerations.  Reinstatement at the conclusion of LWOP is not guaranteed.  Unless you have applied and been approved for LWOP (or have made other arrangements for additional leave directly with me), failure to return to work on June 6, 2008 will be considered a voluntary separation, and your employment will be terminated.

Id. ¶ 47.  See also Yarbrough Decl. ¶ 7.  In response, on May 30, 2008, Plaintiff wrote a letter to Yarbrough informing her, among other things, that

> [y]our demand of my return to work next week, prior to release from my physician and therapist, or be terminated is creating additional

severe mental and physical stress on me.  I will return to my position at
Red Cross as soon as my physician and therapist release me to go back
to work.  Until then I will expect my full pay as Director of Human
Resources and Development while out on FMLA [leave] which is a
federal right.

Yarbrough Decl. ¶ 8, Ex. D; Vosburgh Aff. ¶¶ 53, 56 (emphasis omitted).
According to Yarbrough, the Chapter interpreted this language to be a request for
additional leave.  See Yarbrough Decl. ¶ 9.  Plaintiff points out that nowhere in her
letter did she ask for Leave Without Pay, but that she expected twelve weeks of paid
leave pursuant to the Chapter's FMLA benefit which was in effect at the time her
leave began.  See Vosburgh Aff. ¶ 55.

Plaintiff commenced this action on June 20, 2008.  On June 23, 2008, the
Amended Complaint was filed, and service was returned executed to several of the
defendants, including Darby, Yarbrough and Gordineer on June 24, 2008.

On June 23, 2008, Yarbrough wrote another letter to Plaintiff, which Plaintiff
contends she received on June 24, 2008.  See id. ¶ 58. In that letter, Yarbrough
informed Plaintiff that her job responsibilities changed effective May 7, 2008 to the
Volunteer Coordinator position.  See Yarbrough Decl. ¶ 10, Ex. E.  Plaintiff
disputes that this is the case, as she asked for, and was given until May 9, 2008 to
decide whether to accept that position.  See Vosburgh Aff. ¶ 60.

Yarbrough also informed Plaintiff that her May 30, 2008 request was being
treated as a request for personal leave, and that the Chapter was extending
Plaintiff's leave until July 30, 2008, but that "[u]nless you have applied and been
approved for additional leave, failure to return to work on July 30, 2008 will be
considered a voluntary separation, and your employment will be terminated."
Yarbrough Decl., Ex. E.  See also Vosburgh Aff. ¶¶ 58-59.  Yarbrough further

7

clarified that beginning June 23, 2008 Plaintiff's leave status would convert to Leave Without Pay as Plaintiff would have exhausted her accrued paid leave by that time.  See id., ¶ 11.

On July 10, 2008, Plaintiff wrote to Yarbrough in response to the aforementioned letter, wherein Plaintiff stated, among other things, that Yarbrough previously established that Plaintiff was terminated as of June 6, 2008.  See Vosburgh Aff. ¶ 68, Ex. 8; Yarbrough Decl. ¶ 12.

Counsel for Defendants, Erin Carney, contacted Plaintiff's counsel on July 17, 2008 via letter, wherein she stated that Plaintiff's "employment has not been terminated, and thus, there is no good faith basis for any claims based on her termination."  Yarbrough Decl. ¶ 13, Ex. F.  By this same letter Ms. Carney demanded that Plaintiff withdraw those claims.  See id., Ex. F.

The next day, July 18, 2008, Yarbrough again wrote to Plaintiff.  See Vosburgh Aff. ¶ 69; Yarbrough Decl. ¶ 14, Ex. G.  In her July 18 letter, as well as another letter dated July 25, 2008, Yarbrough explained that Plaintiff had been granted leave through July 30, 2008, and that should Plaintiff find she is unable to return to work on July 31, 2008, she should advise Yarbrough so that a determination may be made as to what, if any accommodation is appropriate.  See id.; Yarbrough Decl. ¶ 15, Ex. H.  In her July 18, 2008 letter Yarbrough reiterated that Plaintiff had not been terminated.  See Yarbrough Decl. G.  In her July 25, 2008 letter, Yarbrough further informed Plaintiff that her "failure to report to work on July 31, 2008 or to contact [Yarbrough] prior to that date will be considered as a voluntary resignation."  Id. Ex. H.

Counsel for Defendants, Ms. Carney, again contacted Plaintiff's counsel by

mail on July 28, 2008, wherein she reiterated that Plaintiff had not been terminated on June 6, 2008 and that Plaintiff had been granted leave through July 30, 2008. See id. ¶ 16, Ex. I.

On September 23, 2008, the present motion was filed.

### IV.  Discussion

#### A.  Summary Judgment Standard

A motion for summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  See also Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008).  "In ruling on a motion for summary judgment, the district court may rely on any material that would be admissible or usable at trial." Major League Baseball Props., Inc. v. Salvino, Inc.,  542 F.3d 290, 309 (2d Cir. 2008) (internal quotation and citation omitted).

The movant has the burden to show that no genuine factual dispute exists. See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598 (1970)).  Moreover, when the court is deciding a motion for summary judgment, it must resolve all ambiguities and draw all reasonable inferences in the non-movant's favor.  See id.

When deciding whether a material issue of fact is in dispute, the court is cognizant that a fact is "material" if "it might affect the outcome of the suit under governing law."  White v. Haider-Shah, No. 9:05-CV-193, 2008 WL 2788896, at *4-5 (N.D.N.Y. Jul. 17, 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S.

9

242, 248, 106 S.Ct. 2505, 2510 (1986)).  Also, "[a] material fact is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id., quoting Anderson, 477 U.S. at 248, 106 S.Ct. at 2510.

### B.  Family Medical Leave Act

Plaintiff alleges claims for interference and retaliation under the FMLA. Defendants argue that these claims must fail because Plaintiff was provided all the leave she was due under the FMLA, and because Plaintiff was demoted prior to her request for FMLA leave.  For the reasons that follow, Defendants' motion for summary judgment regarding Plaintiff's FMLA claims is granted.

Pursuant to the FMLA, eligible employees are entitled to twelve work weeks per year of *unpaid* leave because of, among other things, "a serious health condition that makes the employee unable to perform the functions of the position of such employee."  Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 174 (2d Cir. 2006) (quoting  29 U.S.C. § 2612(a)(1)(D)) (emphasis added).  The Court of Appeals for the Second Circuit recognizes two types of claims under the FMLA: interference and retaliation.  See Shark v. City of New York, No. 03-CV-2616, 2008 WL 4444122, at *4, n.2 (S.D.N.Y. Sept. 29, 2008) (citing Potenza v. City of New York,  365 F.3d 165, 168 (2d Cir. 2004)).

In order to establish a claim for retaliation under the FMLA a plaintiff must prove by a preponderance of the evidence that: (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.  See  Reilly v. Revlon, Inc., 620 F.Supp.2d 524, 537-38 (S.D.N.Y. 2009) (citing Potenza, 365 F.3d

10

at 168).

In support of their motion, Defendants focus on the third and fourth elements of Plaintiff's retaliation claim, to wit, that Plaintiff suffered an adverse employment action which occurred under circumstances giving rise to an inference of retaliatory intent.  Defendants note that while they dispute many of the remaining elements, they reserve the right to move for summary judgment in the future as to those elements, should they not prevail at this time.

Defendants argue that Plaintiff cannot prove that she suffered an adverse employment action which occurred under circumstances giving rise to an inference of retaliatory intent because she was reassigned before she requested leave, and she was not involuntarily terminated.  Plaintiff counters that Defendants retaliated against her by involuntarily demoting her on May 7, 2008, terminating her employment altogether on June 6, 2008, paying her a lower salary while she was on leave, and eliminating her FMLA benefit while she was on leave.

To be sure, it is clear from the record that Plaintiff's position as Director of Human Resources and Development was terminated prior to Plaintiff taking leave. In fact, despite counsel for Plaintiff's protestations to the contrary, Plaintiff admits as much in her affidavit.  See Vosburgh Aff. ¶ 28 ("On May 7, 2008 as approximately 1:00[ p.m.] I met with Yarbrough and Board Member Patricia Williams and was notified that I was terminated as the Director of Human Resources and Development.")  While there may be a question of fact as to whether Plaintiff accepted the Volunteer Coordinator position which was offered at that time, such a question is immaterial to Plaintiff's FMLA retaliation claim, since the alleged retaliatory act, to wit, the termination of her then position as Director of

11

Human Resources and Development occurred hours before Plaintiff sought FMLA leave.

Further, despite Plaintiff's repeated contention that she was involuntarily terminated on June 6, 2008, the facts due not support such a conclusion. As the court understands Plaintiff's argument, she contends that she was involuntarily terminated via Yarbrough's undated letter to Plaintiff, received on or about May 21, 2008. By said letter, Yarbrough informed Plaintiff that she was granted leave through June 6, 2008, and that if Plaintiff did not apply for and receive leave without pay or make other arrangements for leave prior to that date, Plaintiff's failure to return to work on June 6, 2008 would be "considered a voluntary separation" and Plaintiff's employment would be terminated. Despite Plaintiff's letter in response dated May 30, 2008, wherein Plaintiff makes clear her intention to return to her position at the Chapter when she is released to do so by her physician and therapist, but that until such time she remained on FMLA leave, Plaintiff nonetheless concludes that she was involuntarily terminated when she did not return to work on June 6, 2008. Plaintiff's conclusion is counterintuitive, since her letter response to Yarbrough could reasonably be interpreted as a request for additional leave, and according to Yarbrough, was indeed interpreted as such, precluding Plaintiff's June 6, 2008 termination. To be sure, Yarbrough's letter to Plaintiff extending Plaintiff's leave through July 30, 2008, was not received by Plaintiff until June 24, 2008, several days after this action was commenced.[2] Nonetheless, it is clear at this time that Plaintiff was not, in fact, terminated on June 6, 2008.

---

[2] Any argument by Plaintiff that Yarbrough's June 23, 2008 letter was in response to this lawsuit is unfounded. The earliest that any defendant to this action was served was June 24, 2008, the date that Plaintiff herself admits she received Yarbrough's June 23 letter.

Even assuming Plaintiff alleges FMLA retaliation based on a July 30, 2008 termination, a reasonable fact finder could not conclude on this record that Plaintiff was involuntarily terminated. Yarbrough's June 23, 2008 letter to Plaintiff indicated that Plaintiff's leave was extended through July 30, but that unless Plaintiff applied for and received additional leave, her failure to return to work on July 30, 2008, would be deemed a voluntary separation and Plaintiff's employment with the Chapter would be terminated. Nowhere in the record is there evidence that Plaintiff sought additional leave, or that she returned to work by July 30, 2008. Under these circumstances, a reasonable fact finder could not conclude that Plaintiff's termination from employment with the Chapter was an adverse employment action.

Finally, Plaintiff's additional arguments that Defendants retaliated against her for taking FMLA leave by paying her a lower salary and eliminating her FMLA benefit while she was on leave do not support her FMLA retaliation claim. Again, the FMLA provides for twelve weeks of unpaid leave, which Plaintiff received. The issue of whether Plaintiff was entitled to paid leave in accordance with a policy of the Chapter or the amount of said pay, a benefit which is above and beyond that which is required by the FMLA, is not material to Plaintiff's FMLA claim. Accordingly, for the aforementioned reasons, Defendants' motion for summary judgment regarding Plaintiff's FMLA retaliation claim is granted.

Plaintiff also alleges a claim for interference under the FMLA. In order to establish such a claim, a plaintiff must prove by a preponderance of the evidence that: (1) she is an eligible employee under the FMLA; (2) defendants constitute an employer under the FMLA; (3) she was entitled to leave under the FMLA; (4) she

13

gave notice to defendants of her intention to take leave; and (5) defendants denied her benefits to which she was entitled by the FMLA.  See Reilly, 620 F.Supp.2d at 535 (citation omitted).  According to regulations promulgated pursuant to the FMLA, an interference claim could arise where an employer refused to authorize FMLA leave, discouraged an employee from using such leave, or discriminated against an employee who has used such leave.  See Potenza, 365 F.3d at 167 (citing 29 C.F.R. § 825.220(b)(c).

In support of their motion, Defendants focus on the fifth element of Plaintiff's interference claim, to wit, that Defendants denied Plaintiff benefits to which she was entitled by the FMLA.  As with their retaliation claim, Defendants note that while they dispute many of the remaining elements, they reserve the right to move for summary judgment in the future as to those elements, should they not prevail at this time.

Defendants argue that Plaintiff cannot prove that she was denied benefits to which she was entitled under the FMLA because she was given the requisite twelve weeks of leave.  In opposition to Defendants' motion for summary judgment as to Plaintiff's claim for interference under the FMLA, Plaintiff argues that Defendants interfered with her rights under the FMLA by involuntarily demoting and terminating her employment, reducing her benefits and eliminating her FMLA benefit altogether as well as failing to promptly notify her of her FMLA status after May 7, 2008.  Defendants reply that Plaintiff was not harmed by any lack of notification regarding her FMLA status or by the change in the Chapter's FMLA policy because Plaintiff was provided all benefits she was due under the FMLA.

To the extent Plaintiff's arguments mirror those in support of her FMLA

14

retaliation claim, they are equally unavailing and fail to support her interference claim. Moreover, it is clear from the record that Plaintiff was given twelve weeks of leave, which is all that is required under the FMLA. See Sista, 445 F.3d at 174. See also Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 161 (2d Cir. 1999). To the extent Plaintiff seeks to base her interference claim on Defendants' failure to notify her of her FMLA status after May 7, 2008, where, as here, an employee has sought leave due to "a serious health condition that [made her] unable to perform the functions of [her] position" pursuant to 29 U.S.C. § 2612(a)(1)D), and has been given all of the benefits due under the FMLA, the failure of an employer to comply with notification requirements does not amount to interference as such failure in no way interferes with the employee's leave, benefits or reinstatement. See id., at 161-62. For the foregoing reasons, Defendants' motion for summary judgment as to Plaintiff's FMLA interference claim is granted.

Having dismissed Plaintiff's federal claims, the court nonetheless exercises its discretion to retain jurisdiction of the remaining state law claims. See 28 U.S.C. § 1367(c)(3). Although this case is at a relatively early stage of the litigation, the remaining state law claims do not present novel issues of law which would implicate principles of federalism and comity. Cf. Valencia ex rel. Franco v. Lee, 316 F.3d 299, 305-06 (2d Cir. 2003). Accordingly, in the interests of judicial economy, the court will retain jurisdiction of Plaintiff's remaining NYHRL claims.

### C. NYHRL Claims

By her Amended Complaint, Plaintiff alleges claims of age discrimination, disability discrimination, and retaliation under the NYHRL. Defendants have made clear, both in their papers and at oral argument, that they seek summary judgment

15

on Plaintiff's age discrimination and retaliation claims, limited solely to the extent said claims are based on Plaintiff's June 6, 2008 termination. Defendants also seek dismissal of Plaintiff's disability claim to the extent it is based on a June 6, 2008 termination, but also seek dismissal of said claim to the extent same relies on a failure to provide reasonable accommodation. As the court has previously determined that no rational fact finder could conclude on this record that Plaintiff was terminated on June 6, 2008, Defendants' motion for summary judgment is granted in this regard. Accordingly, the court will discuss Plaintiff's NYHRL claim solely regarding her claim for disability discrimination based on failure to provide a reasonable accommodation.

### *1. Disability Discrimination*

By the Amended Complaint, Plaintiff alleges that Defendants failed to provide her with a reasonable accommodation and terminated her because of her disability. Pursuant to NYHRL, "[i]t shall be an unlawful discriminatory practice for an employer . . . , to refuse to provide reasonable accommodations to the known disabilities of an employee . . . in connection with a job or occupation sought or held." N.Y. Exec. LAW § 296.3(a) (McKinney 2008).

In order to establish a claim for failure to provide a reasonable accommodation, Plaintiff must establish that (1) she is an individual with a disability, (2) Defendants had notice of her disability, (3) she could perform the essential functions of her job with reasonable accommodation, and (4) Defendants failed to make such accommodations. See Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 216 (2d Cir. 2001); Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999); Romanello v. Shiseido Cosmetics Am. Ltd.,

16

00-Civ.-7201, 2002 WL 31190169, at *7 (S.D.N.Y. Sept. 30, 2002), aff'd, 71 Fed. Appx. 880 (2d Cir. 2003).

Defendants argue that summary judgment is appropriate on Plaintiff's reasonable accommodation claim because Defendants granted Plaintiff twelve weeks of medical leave, Defendants advised Plaintiff that she may apply for additional leave or another accommodation if requested, and Plaintiff did not seek additional leave. Although Plaintiff's counsel failed to address this argument in Plaintiff's papers opposing summary judgment, at oral argument, counsel argued that Defendants failed to provide a reasonable accommodation because they failed to provide Plaintiff with paid leave at the salary of the Director of Human Resources and Development, and because they failed to inquire as to a reasonable accommodation as is required under the NYHRL.

As to Plaintiff's initial argument, that Defendants failed to provide her a reasonable accommodation because they failed to provide her with paid leave at the salary of the Director of Human Resources and Development, the record is clear, and Plaintiff admits, that she was terminated from that position before she sought leave due to a serious health condition. Moreover, as previously discussed, Defendants provided Plaintiff with twelve weeks of leave. Courts have held that a leave of absence may be considered a reasonable accommodation, although employers are not required to provide employees with indefinite periods of leave. See Starr v. Time Warner, Inc., No. 07-Civ.-5871(CD), 2007 WL 4144627, at *4 (S.D.N.Y. Nov. 21, 2007) (citing Stamey v. NYP Holdings, Inc., 358 F.Supp.2d 317, 324 (S.D.N.Y.2005); Powers v. Polygram Holding, Inc., 40 F.Supp.2d 195, 201 (S.D.N.Y.1999)). Accordingly, Defendants' failure to provide paid leave to

17

Plaintiff at a salary for a position she held but from which she was terminated prior to requesting leave, is not a failure to provide a reasonable accommodation.

As to the Plaintiff's second argument, counsel argued that the NYHRL differs from the Americans with Disabilities Act ("ADA") in that it puts the onus on the employer to inquire with the employee about the existence of a reasonable accommodation.  However, it is clear that disability discrimination claims, whether brought under federal or state law, are subject to the same legal standard.  See Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 n.3 (2d Cir. 2001). See also King v. Town of Wallkill, 302 F.Supp.2d 279, 289 (S.D.N.Y. 2004); D'Avilar v. Cerebral Palsy Ass'ns of New York, 851 N.Y.S.2d 63, 17 Misc.3d 1117(A) (N.Y. Sup. Ct. 2007).  Under both the ADA and the NYHRL, it is the employee who has the burden to identify an accommodation, but the employer is obliged to take affirmative steps to assist the employee in this process.  See Jackan v. New York State Dep't of Labor, 205 F.3d 562, 566, 568 n.4 (2d Cir. 2000).  The record here reflects that on July 18 and 25, 2008, Yarbrough notified Plaintiff that if she is unable to return to work on July 31, 2008, she should advise Yarbrough so that a determination may be made as to what, if any, accommodation is appropriate. See Yarbrough Decl. Exs. G & H.  Again, the record is devoid of any evidence that Plaintiff sought an accommodation aside from her initial request for leave and her subsequent assertions that she would not return to work until her physician and therapist permitted her to do so.  Accordingly, Defendants' motion for summary judgment as to Plaintiff's failure to accommodate claim is granted.

### ***D.  Claims Against Board Members***

By her Amended Complaint, Plaintiff alleges that the Board Members are

individually liable on her NYHRL claims as aiders and abettors in the unlawful discriminatory actions alleged pursuant to N.Y. Exec. Law § 296(6) and on her FMLA claims.

Defendants seek dismissal of all claims against the Board Members, citing the following provision of the New York Not-For-Profit Corporation Law:

> [N]o person serving without compensation as a director, officer or trustee of a corporation, association, organization or trust described in section 501 (c)(3) of the United States internal revenue code shall be liable to any person other than such corporation, association, organization or trust based solely on his or her conduct in the execution of such office unless the conduct of such director, officer or trustee with respect to the person asserting liability constituted gross negligence or was intended to cause the resulting harm to the person asserting such liability.

N.Y. Not-for-Profit Corp. Law § 720-a (McKinney 1986).  As an initial matter, because Defendants have been granted summary judgment on Plaintiff's FMLA claims, the court need not address the liability of the Board Members in that regard. As to the remaining claims, Defendants must first demonstrate that the Board Members are entitled to the benefit of § 720-a.  However, should Plaintiff proffer evidence that the conduct of the Board Members constituted gross negligence or was intended to cause harm, then Plaintiff's claims may survive summary judgment.

Defendants argue that the Board Members are entitled to the benefits of this provision, and that Plaintiff has failed to allege or provide any evidence that the conduct of any of the Board Members amounted to gross negligence or that any of the Board Members acted with intention to cause Plaintiff harm.  Accordingly, Defendants argue, all claims against the Board Members should be dismissed. Plaintiff counters that the Board Members are subject to individual liability under

19

the NYHRL, and that her allegations in the Amended Complaint establish the gross negligence or intentional conduct of the Board Members.  Accordingly, Plaintiff argues, her claims against the Board Members should go forward.  Specifically, Plaintiff cites Paragraphs 14 through 16 of the Amended Complaint, wherein she alleges that the Board Members are individually liable under the FMLA and NYHRL and that the Board Members conspired with Yarbrough and Gordineer as well as "personally and actually participated in the unlawful discriminatory practices set forth in [the Amended C]omplaint[.]" Am. Compl. ¶¶ 14-16.

As an initial matter, the court notes that it clearly notified Plaintiff that the pending motion has been converted to a motion for summary judgment prior to the submission of Plaintiff's opposition papers.  Despite such notice, Plaintiff opposes the motion insofar as it relates to the Board Members as a motion to dismiss, relying solely on her allegations in the Amended Complaint.  While the court is not obligated to undertake a review of the record in order to locate evidence of a factual dispute, see Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir.2002), in the interest of judicial economy, it has done so.

To be sure, there is no dispute that the Chapter is a charitable organization under Section 501(c)(3) of the Internal Revenue Code and that its Board Members serve as volunteers without receiving compensation.  See Pl.'s Resp. to Statement of Material Facts, at ¶ 1, Dkt. No. 50.  Thus, Defendants have met their burden to show that the Board Members are entitled to the benefit of § 720-a.  The only apparent issue is whether Plaintiff has proffered enough evidence to create a question of fact regarding whether any of the Board Members acted with gross negligence or intent to cause her harm.

20

In her affidavit, which is the only evidence proffered by Plaintiff in opposition to the present motion, Plaintiff only mentions two individual Board Members by name – Patricia Williams and Dawn Darby.  To be sure, Williams has not been served and has therefore been dismissed from this action on that basis. However, even if Williams was a defendant to this action, Plaintiff's allegations regarding her involvement are limited to Williams's alleged presence as a witness and scribe at the May 7, 2008 meeting between Plaintiff and Yarbrough.  See Aff. of Cheryll Vosburgh, November 17, 2008, ¶¶ 28, 34, 49 & 51, Dkt. No. 50. Accordingly, Plaintiff has failed to proffer any evidence that Williams acted with gross negligence, or an intent to cause her harm.

Regarding Darby's involvement, Plaintiff first alleges that Darby, who is a close personal friend of Yarbrough's, was aware that Plaintiff called the Red Cross Concern Connection Line ("CCL") to report "acts of inappropriate conduct and age discrimination perpetuated by Yarbrough and Gordineer."  Vosburgh Aff. ¶¶ 19, 23. Thereafter, Plaintiff alleges, Darby, along with Yarbrough and Gordineer, "began an escala[t]ing campaign of offensive, threatening, intimidating, and belligerent behavior toward [Plaintiff] in retaliation" for the CCL complaint.  Id. ¶ 24.  As an example of such behavior, Plaintiff alleges that Yarbrough and Gordineer, along with Darby and other unnamed members of the Board, "padded [Plaintiff's personnel file] with derogatory performance remarks, reprimands, written warnings and disparaging emails[.]" Id. ¶ 25.  Plaintiff also alleges generally that such "acts by Yarbrough, Gordineer, Darby and other members of the [B]oard . . . were a calculated effort to force [Plaintiff] to resign [her] position as retaliation for [the CCL complaint] and in furtherance of the age based discrimination of employees

21

who had longevity with [the Chapter]." Id. ¶ 43.  Finally, Plaintiff alleges that her termination "was an act of age discrimination and retaliation by Gordineer, Yarbrough, and" unnamed members of the Board.  Id. ¶ 90.

To begin with, Plaintiff cannot survive summary judgment on her claims of individual liability against the Board Members by submitting evidence in the form of an affidavit that certain acts were undertaken by "other members of the Board". Such an allegation would not even survive a motion to dismiss.  See Leykis v. NYP Holdings, Inc., 899 F.Supp. 986, 993-94 (E.D.N.Y. 1995) (purported NYHRL claim insufficient where specific facts implicating individual defendants are lacking).  To be sure, when asked at oral argument to identify any fact questions in the record regarding the remaining Board Members,  Plaintiff's counsel made reference to a document regarding a certain board meeting and argued that further discovery is necessary to investigate the individual board members' actions.  The court notes that counsel failed to submit said document as evidence.  Moreover, even if the court had not converted Defendants' motion to dismiss to a motion for summary judgment, Plaintiff's allegations in the Amended Complaint are insufficient to state a claim against any of the Board Members other than Darby.  In the Amended Complaint, Plaintiff merely alleges that the Board Members "personally and actually participated in the unlawful discriminatory practices set forth in [the Amended Complaint] in that they aided, abetted, incited, compelled, or coerced the doing of the acts forbidden by [the NYHRL]."  Am. Compl. ¶ 15.  Plaintiff goes on to allege that "Yarbrough, Gordineer and the Board Members conspired to commit the acts and omissions described in [the Amended Complaint.]" ¶ 16.  Such conclusory allegations do not serve to notify the individual Board Members of the

22

conduct which he or she participated in that would give rise to NYHRL liability. See Leykis, 899 F.Supp. at 994.  While at oral argument, counsel alleged that the Board Members failed to exercise supervision over Yarbrough and allowed her to "run amok," such an allegation was not included in the Amended Complaint, and even if it were, it is questionable whether the failure to supervise an executive director translates into board member liability, to wit, gross negligence or intentional conduct.

Nonetheless, Plaintiff has submitted enough evidence to create a question of fact regarding whether the actions of individual board member Darby were grossly negligent, or were undertaken with intent to cause Plaintiff harm.  "Gross negligence is the commission or omission of an act or duty owing by one person to a second party which discloses a failure to exercise slight diligence. In other words, the act or omission must be of an aggravated character as distinguished from the failure to exercise ordinary care." Kofin v. Court Plaza, Inc., — N.Y.S.2d —, 23 Misc.3d 1121(A) (N.Y. Sup. Ct. 2009) (citing Weld v. Postal Tel. Cable Co., 210 N.Y. 59 (1913)).  One court found that evidence failed to show gross negligence where the infringement of plaintiff's copyrights by defendant organization and its members was not willful, and members acted within the scope of their authority in furtherance of the organization and its objectives.  See Scanlon v. Kessler, 11 F.Supp.2d 444, 448 (S.D.N.Y. 1998).  In sharp contrast, here, Plaintiff alleges by affidavit that Darby was personally involved in actions undertaken to retaliate against Plaintiff for reporting age discrimination on behalf of Yarbrough and Gordineer.  In a state court action regarding a claim for wrongful discharge, the court found that plaintiff made a sufficient showing of gross negligence where he

23

submitted evidence that a board member made accusations against Plaintiff "without conducting any investigation, presenting any proof, or informing those present at the meetings of the basis for her accusations." Brown v. Albany Citizens Council on Alcoholism, Inc., 605 N.Y.S.2d 577, 579, 199 A.D.2d 904, 906 (N.Y. App. Div. 1993). The evidence of Darby's actions here, similar to the actions of the board member in Brown, rise to the level of gross negligence, if not intentional conduct. Accordingly, Defendants' motion for summary judgment as to individual liability of board member Darby is denied, as Plaintiff has identified a question of fact regarding whether Darby is entitled to immunity under § 720-a. Defendants' motion for summary judgment as to the remaining Board Members is granted.

### *E. Sanctions*

Defendants seek sanctions against Plaintiff and her attorney pursuant to the court's inherent power and 28 U.S.C. § 1927 for failing to withdraw frivolous claims, to wit, all claims predicated on Plaintiff's alleged June 6, 2008 termination, as well as attorneys' fees and costs associated with the filing of the present motion. A district court may impose sanctions "under its inherent power as a penalty for misconduct during the course of litigation." Page v. Monroe, No. 1:02-CV-0526, 2009 WL 1347077, at *11 (N.D.N.Y. May 13, 2009) (citing Milltex Indus. Corp. v. Jacquard Lace Co., 55 F.3d 34, 37-38 (2d Cir. 1995)). Sanctions are authorized under 28 U.S.C. § 1927 "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose, and upon a finding of conduct constituting or akin to bad faith." Gollomp v. Spitzer, 568 F.3d 355, 368 (2d Cir. 2009) (citation and internal quotation omitted). "[S]anctions are not appropriate unless the challenged actions

24

are (1) entirely without color and (2) motivated by improper purposes, such as harassment or delay." Page, 2009 WL 1347077, at *11 (quoting Milltex Indus., 55 F.3d at 37-38.  In addition to sanctions, 28 U.S.C. § 1927 provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Id. quoting 28 U.S.C. § 1927.

According to Defendants, all claims that are predicated on Plaintiff's alleged June 6, 2008 termination are frivolous, unreasonable and vexatious, and that by bringing such claims, Plaintiff and her attorney wasted judicial resources as well as the expenditure of attorneys' fees and costs associated with responding to said claims.

In her papers in opposition to Defendants' motion for sanctions, Plaintiff fails to address the correct factual basis for the motion, which is the merit of Plaintiff's claims stemming from her alleged June 6, 2008 termination.  Instead, Plaintiff focuses on her claims against the Board Members, and argues that said claims were not brought in bad faith.  Nonetheless, counsel was given an opportunity to address Defendants' motion for sanctions at oral argument, wherein he simply reiterated Plaintiff's argument that she was terminated on June 6, 2008.

At this time, the court is reluctant to conclude that counsel's actions in setting forth claims based on Plaintiff's alleged June 6, 2008 termination were motivated by improper purposes, and thus sanctionable.  Accordingly, Defendants' motion for sanctions is denied.

### *V.  Conclusion*

In accordance with the foregoing, it is ORDERED that the motion for summary judgment by defendants, see Dkt. No. 32, is GRANTED in part and DENIED in part; and it is further

ORDERED that defendants Linda Andrei, Susan Backstrom, Anne Digiacomo, Mary Dorman, Thomas Dorman, Geoff Dunn, Jane Dunnick, Sarah Jane Ellsworth, Martha Mapes, William Maxwell, Michael Pinnisi, George Taber, Patricia Williams, and Michael Yehl, are DISMISSED from this action; and it is further

ORDERED that defendants' motion for sanctions is DENIED.

The parties are hereby directed to promptly contact Magistrate Judge George H. Lowe to schedule a Rule 16 conference in this matter.


IT IS SO ORDERED.


DATED:     October 27, 2009
           Syracuse, New York


_____
Neal P. McCurn
Senior  U.S. District Judge

26